Maria L.P. Abrantes COULIBALY,
Appellant,

v.

Assis V. MALAQUIAS, Appellee.

No. 96–CV–1390.

District of Columbia Court of Appeals.

Submitted Dec. 16, 1997.

Decided April 15, 1999.

Robert A. Ackerman, Washington, DC, was on the brief for appellant.

Ted J. Williams, Washington, DC, was on the brief for appellee.

Before WAGNER, Chief Judge, STEADMAN and RUIZ, Associate Judges.

RUIZ, Associate Judge:

This is an appeal from an order of the trial court dismissing a complaint on the ground of forum non conveniens. Although we give the trial court significant deference on such discretionary rulings, we reverse the order of dismissal. We conclude that the trial court applied an incorrect legal standard and relied upon facts not in the record in fashioning its ruling. Furthermore, our examination of the relevant factors leads us to conclude that on this record it would be an abuse of discretion to dismiss the suit for forum non conveniens in favor of litigation in Portugal. We vacate the order of dismissal and remand for a trial on the merits.

## I.

### A. Factual Background

Plaintiff-appellant, Maria Abrantes Coulibaly, a dual citizen of Angola and Portugal, brought suit in the Superior Court of the District of Columbia alleging breach of contract and conversion against appellee, Assis V. Malaquias, a dual citizen of Angola and Canada. This highly disputed case arises out of an alleged oral agreement between the litigants pursuant to which Coulibaly made a series of payments totaling $60,000 to Malaquias to invest in real estate and in a business venture. According to Coulibaly, the agreement was made in Portugal in April–May of 1994, when Coulibaly met Malaquias, a distant relative, in Lisbon and discussed with him her plans to move to the Washington, D.C. area. According to Coulibaly, under the terms of the agreement, she agreed to send monies from time to time to Malaquias in Washington, D.C. totaling $100,000. That money would be used to secure a $1,000,000 loan which Malaquias was to use in part to buy a townhouse for her in the area (as he represented to her that he was authorized to perform real estate transactions in D.C.), and, in part, to invest on her behalf in a business which Malaquias had with his brother in Canada. In his affidavit, Malaquias denies all of Coulibaly's claims, alleging that the money he received was a gift from Coulibaly, who was trying to involve him in a romantic relationship, and that the lawsuit is retaliatory because he did not return her affection.

As Malaquias characterizes it, both parties are "globetrotting" individuals with ties to a number of nations. For approximately three years before the United States established diplomatic relations with Angola, Malaquias was the director of the Angola Institute, an agency of the Angolan government, with offices located at 1200 G Street, N.W., Washington, D.C. He left his post there sometime after November 1994, when the United States resumed formal diplomatic relations with Angola.[1]

Coulibaly has lived in Angola, Portugal, Brazil and Switzerland. She was formerly the Director of the Foreign Investment Bureau of the Government of Angola and taught economics and commercial law at an Angolan university. She came to the United States in 1994 to study English and to further the legal degree she obtained in Lisbon.

At the time of the alleged breach and conversion, Coulibaly and Malaquias both lived in Northern Virginia. However, as is often the case in an integrated metropolitan area, Malaquias worked in the District of Columbia and Coulibaly planned to study at Georgetown University, also in the District.

---

1. While the record does not disclose the date that Malaquias' position at the Angola Institute ended, the final peace treaty between Angola and the National Union for the Total Independence of Angola (UNITA) was executed on November 4, 1994. WORLD ALMANAC & BOOK OF FACTS 1997 739 (1996). By December of 1995, an Angolan ambassador was at work in the United States.

Although the parties agree on very little, both parties are in accord that Coulibaly made wire transfers in the amounts of $30,-000 on June 15, 1994, and $15,000 on September 1, 1994, from her bank in Geneva, Switzerland, into Malaquias' Citibank account in the District of Columbia. Coulibaly directed the transfers while she was in Portugal. During the first four months of her arrival in the United States, until approximately January of 1995, the parties engaged in a number of transactions whereby Coulibaly allegedly gave Malaquias different sums to arrange for the payment of her tuition at Georgetown, and to pay for the purchase of a townhouse, an apartment for her daughter and furniture. The parties have stipulated that, in addition to the wire transfers, Coulibaly gave Malaquias three personal checks in the amounts of $1,500, $5,000, and $10,000.[2]

### B. Motions for Summary Judgment

Coulibaly filed a motion for partial summary judgment for conversion of $57,765 (the $60,000 sent by wire transfer and personal check plus the $1,500 check less a credit for certain expenditures made by Malaquias on Coulibaly's behalf). Along with his opposition to Coulibaly's summary judgment motion, Malaquias also filed a cross-motion for summary judgment arguing that dismissal on the basis of forum non conveniens was proper because the claim arose in Portugal, which "has far more substantial contacts with plaintiff's claim than does the District."[3] Malaquias claimed that "a trial in Portugal would be easier, more expeditious and less expensive than a trial in the District of Columbia because the cause of action took place in Portugal, the witnesses to the alleged contract reside outside the United States, the

Court's subpoena power would not be effective, and any judgment would be unenforceable outside the United States." He contended that Portuguese law would be applicable to this action. Malaquias argued that because there was a greater nexus with Portugal, the courts of the District of Columbia and its citizens should not be burdened with this litigation.

Coulibaly responded that the District of Columbia was the more appropriate forum and pointed to the following factors in support of her position: 1) Malaquias maintains a business office and a bank account in the District of Columbia and, although he spends time in Canada, has a residence in Virginia; 2) Coulibaly lives in nearby Virginia; 3) Coulibaly's claim stemming from an initial discussion in Portugal is based on an agreement which was reaffirmed by the parties in the District in September of 1994; 4) the funds in question were deposited into a bank account located in the District of Columbia; 5) of the seven witnesses on Coulibaly's witness list, three reside in the Washington metropolitan area (Coulibaly, Ambassador Dos Santos Franca, and Agostinho Santos); two witnesses reside outside of the country but are willing witnesses who will not require compulsory process at trial (Coulibaly's husband, who lives in Switzerland, and her brother, who lives in Portugal); 6) compulsory process would be more easily available and less costly in the District than in Portugal; 7) judgment can be enforced in the District of Columbia because Malaquias has a bank account with approximately $15,000 here; and 8) there is no evidence in the record of any attempt by Coulibaly to vex or harass Malaquias by choosing this forum.

---

**2.** According to the complaint, on September 26, 1994, Coulibaly gave Malaquias a personal check for $10,000 toward the purchase of a townhouse as previously agreed. On December 16, 1994, she delivered another check to Malaquias in the amount of $5,000 as a commission for procuring an apartment for her daughter and another check for $1,500 to purchase furniture for the new apartment.

The $10,000 check was delivered to Malaquias in the District of Columbia; the $5,000 check was drawn on Coulibaly's bank account in the District of Columbia and mailed to Malaquias from Portugal.

Appellee claims that "the record does not disclose whether the three personal checks were deposited into the same Citibank account as the two wire transfers." We cannot deduce from the record the location of the bank where these checks were deposited. However, there is some indication on the record that Malaquias kept his bank account in the District of Columbia at a Citibank branch.

**3.** Furthermore, he argued that there was a "minimal factual nexus between this action and the District of Columbia," and a "substantial factual nexus between this action and Portugal."

Coulibaly noted that there need be no concern about the unfairness of imposing the burden of jury duty on citizens of this forum because neither party had requested a jury. She argued that the District of Columbia has more substantial contacts with the litigation than does Portugal because the District is where the express oral contract was reaffirmed in September of 1994, where the money was deposited, where she made repeated entreaties that Malaquias sign a written contract, where the oral contract was rescinded, where Coulibaly asked that appellee return her money, and where the conversion took place. Coulibaly further argued that neither the laws of Portugal nor Canada are implicated in the action. Finally, she argued that no alternate forum was realistically available.

### C. Trial Court Ruling

In a brief written order, the trial judge noted all of the factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), but without expressly applying them to the facts of this case. It assumed, without analysis or explanation, that "plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action." Relying on the burden-shifting language in *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8 (D.C.1986), it then concluded that, after reviewing the motions and the record, "plaintiff has failed to make the necessary showing." The court reached its conclusion noting that: 1) neither party nor any of the witnesses reside in the District of Columbia; 2) regardless of which version of the story one accepts, the lawsuit began in Portugal and the money was wired from Portugal; 3) the principal thrust of the defense is that the lawsuit is intended to harass the defendant; 4) if plaintiff prevails, the judgment could not be enforced by the Superior Court; 5) it rejected Coulibaly's "attempts to convert defendant's purely business contacts with the District into contacts that give rise to localized interests that this court or community should

4. Malaquias argues for the first time on appeal that Virginia is an appropriate alternative forum.

5. D.C.Code § 13–425 (1995) states that:

resolve;" and 6) "the fact that the funds in question have been placed in a local bank two years ago does not help plaintiff to demonstrate why this litigation should remain in this jurisdiction." The court remarked that because neither party had raised the issue of whether an alternative forum was available to plaintiff, it would make the dismissal conditioned on the "fact that an alternative forum is available." [4]

## II.

### Forum Non Conveniens

■ "Although the authority to dismiss for *forum non conveniens* is conferred by statute,[5] this court has adopted the *forum non conveniens* analysis articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)." *Smith v. Alder Branch Realty Ltd. Partnership*, 684 A.2d 1284, 1287–88 (D.C. 1996). Under the *Gulf Oil* analysis, a court considers two categories of factors in deciding whether to dismiss for forum non conveniens, the "private interest of the litigant[s]" and the "public interest" of the forum. *Id.* at 1288. Factors relevant to the private interests of the litigants include:

1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling witnesses; 3) the cost of obtaining attendance of willing witnesses; 4) the possibility of viewing premises, if view would be appropriate to the action; 5) all other practical problems concerning the ease, expedition and expense of the trial; 6) the enforceability of a judgment once obtained; 7) evidence that the plaintiff attempted to vex, harass or oppress the defendant by his choice of forum, and 8) the relative advantages and obstacles to fair trial.

*Mills, supra,* 511 A.2d at 10 (citing *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. 839).

■ The public interest factors include:

When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just.

1) administrative difficulties caused by local court dockets congested with foreign litigation; 2) the local interest in having localized controversies decided at home; 3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation, and 4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction.

*Id.* (citing *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. 839).

■ Once the relevant private and public factors are considered, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. 839). The four-prong analysis established by the U.S. Court of Appeals of the D.C. Circuit in *Pain v. United Technologies Corp.,* 205 U.S.App.D.C. 229, 637 F.2d 775 (1980),[6] is helpful to the inquiry the trial court must make:

As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

205 U.S.App.D.C. at 238–39, 637 F.2d at 784–85.

■ Furthermore, an important consideration in forum non conveniens analysis as it has developed in this jurisdiction is whether the plaintiff is a resident of the District of Columbia. *See Mills, supra,* 511 A.2d at 10; *see also Washington v. May Dep't Stores,*

388 A.2d 484, 486 (D.C.1978). When the plaintiff resides in another jurisdiction, we afford less deference to a plaintiff's choice of forum, particularly where the defendant also does not live in the District of Columbia. *See Mills, supra,* 511 A.2d at 11. In most cases a defendant who invokes the doctrine of forum non conveniens bears the burden of proof. *See id.* at 10. However,

Where it is shown that neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction *which has more substantial contacts* with the cause of action, the burden normally allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens* rests instead upon the plaintiff to show why it is not.

*Id.* at 11 (emphasis added).

■ As to our standard of review, "[t]he decision whether to entertain an action or to dismiss it on the ground of *forum non conveniens* is entrusted to the sound discretion of the trial court and will be reversed on appeal only upon a clear showing of abuse of discretion." *Mills, supra,* 511 A.2d at 10 (citing cases). In reviewing questions of forum non conveniens, this court makes an independent evaluation of the "private interest" and the "public interest" factors. *See Neale v. Arshad,* 683 A.2d 160, 162 (D.C. 1996). This court interprets the standard of review "to mean that, first we apply 'close scrutiny' to the specific factors identified and evaluated by the trial court; once we are satisfied that the trial court took the proper factors into account, we adopt a deferential approach in determining whether the trial court's decision fell within the 'broad discretion' committed to it." *Smith, supra,* 684 A.2d at 1287.

### III.

On appeal, Coulibaly argues that the trial court abused its discretion by shifting the burden of proof to her, even as a non-resident of the District of Columbia, because under *Mills* the defendant continues to have

---

**6.** We have previously cited to *Pain* for other propositions as guidance in our forum non conveniens analysis. *See, e.g., Dunkwu v. Neville,*

575 A.2d 293, 295 (D.C.1990); *Mills, supra,* 511 A.2d at 11.

the burden unless the jurisdiction where the claim arose has "more substantial contacts" with the cause of action than the District of Columbia. *See Mills, supra,* 511 A.2d at 11. According to Coulibaly, it is plain that this case is not one in which the jurisdiction where the initial oral agreement took place, Portugal, has more substantial contacts with the cause of action than does the District. She further contends that the trial court did not consider and balance all of the numerous significant contacts which the District has with the cause of action in comparison with the slight contacts with Portugal. Furthermore, she contends that the trial court relied on facts not supported by the record as the basis for its conclusion. Appellant notes that 1) no money was wired from Portugal as the documentary evidence shows that the money was wired from Switzerland; 2) a judgment for plaintiff would be enforceable here because the record showed that Malaquias had approximately $15,000 in his bank account in the District of Columbia; and 3) there was no evidence to support Malaquias' allegations that Coulibaly's purpose in bringing this lawsuit in the District of Columbia was to harass him. Therefore, Coulibaly contends, the trial court improperly placed the burden on her to show why dismissal should not be granted.

Coulibaly points to the following significant contacts with the District for our review of the relative contacts of the litigation with this forum and Portugal:

* the oral contract made in Portugal was to be performed in the District; its purpose was to secure a loan in the District to be used for the purchase of a townhouse in the Washington area and for investment in defendant's businesses here, not in Portugal;

* the breach of contract took place in the metropolitan Washington area and in the District, not in Portugal;

* the tort of conversion occurred in the District;

* no part of the $60,000 came from Portugal;

* the $60,000 was deposited in Malaquias' bank account in the District, where the money earned substantial interest;

* of the seven designated plaintiff's witnesses, three of them, including plaintiff (four, including defendant, when the case began) resided in the metropolitan Washington area within twenty-five miles of the trial court and subject to its subpoena powers.[7] Only one witness, Coulibaly's brother, lives in Portugal;

* neither party did business in Portugal nor maintained an office or bank account there;

* there are no documentary records located in Portugal; the relevant bank records are located in the District.

■■■■ Malaquias counters that the trial court conducted the correct legal analysis and took into account the *Gulf Oil* factors. He argues that the trial court did not base its ruling on errors of fact, but even if we find that it did, there is so little contact between Coulibaly's claims and the District of Columbia, that the record strongly supports affirmance of the trial court's dismissal on forum non conveniens grounds. Malaquias does not respond directly to Coulibaly's claim that the trial court did not conduct the correct analysis in applying the *Mills* burden-shifting rule. Instead, he argues that the trial court was correct in shifting the burden of proof to the plaintiff because most of the ties that Coulibaly asserts with the litigation are not to the District of Columbia, but to Northern Virginia.[8]

---

7. The plaintiff's witness list, and the locations of the witnesses are as follows: 1) Maria Luisa Abrantes Coulibaly, plaintiff-appellant (Northern Virginia); 2) Assis V. Malaquias, defendant-appellee (resides in Canada and has a residence in Northern Virginia); 3) Ambassador Antonio dos Santos Franca (District of Columbia); 4) Agostinho Santos (attends law school at George Washington University in the District of Columbia; lives in Northern Virginia); 5) Joao Manuel Abrantes, plaintiff's brother (lives in Portugal, but is willing to testify at trial without compulso-

ry process); 6) Ibrahima Coulibaly, plaintiff's husband (lives in Switzerland, but is willing to testify at trial without compulsory process); and 7) Nelson Malaquias, defendant-appellee's brother (Canada).

8. In his motion for summary judgment, Malaquias argued that Portugal was the appropriate alternative forum, never mentioning Virginia as a possible forum. The discretionary decision that Malaquias sought was thus only as between the District and Portugal, and he cannot ask an

Malaquias points to the following factors in support of his argument:

* the contract was entered in Portugal;

* although Coulibaly alleges that the terms of the contract were further refined in the United States, the record lacks any statement that negotiations occurred in the District of Columbia rather than in Virginia where both parties resided;

* part of the contract was to be performed in Canada;

* there is no allegation in the record that Malaquias' alleged business interests in which Coulibaly was to invest were located in the District of Columbia;

* the record does not indicate that the townhouse Coulibaly was to purchase with the help of Malaquias would be located in the District of Columbia;

* the funds Malaquias paid on Coulibaly's behalf were all disbursed in Virginia;

* the place of the alleged conversion was Virginia and not the District of Columbia;

* Virginia law would be applicable because the conversion occurred in Virginia.

## IV.

■ In reviewing a trial court decision for abuse of discretion, we "must determine whether the decision maker failed to consider a relevant factor, ... relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *See Johnson, supra* note 8, 398 A.2d at 365 (citation and internal quotations omitted). For the reasons below, we conclude that the trial court's ruling was defective in all three respects.

■ First, the trial court erred in shifting the burden of proof to the plaintiff without first considering whether Coulibaly's claim arose in Portugal, and whether it had more substantial contacts with the underlying claim than the District of Columbia. In *Neale, supra,* 683 A.2d 160, this court explained the *Mills* burden-shifting standard:

> [The defendant] attempts to bring this case within *Mills, supra,* and *Dunkwu v. Neville,* 575 A.2d 293 (D.C.1990), in which the court recognized that a plaintiff's choice of forum "deserves less deference" when—as in the present case—he or she is a nonresident of the District of Columbia, and that the burden may shift to the plaintiff to justify bringing suit in the District when neither party resides in the District, which also is true here.... But the "may" in the preceding sentence is critical: in both *Mills* and *Dunkwu* we were explicit in stating that the burden shifts to the plaintiff *only* where " 'the plaintiffs claim has arisen in another jurisdiction which has more substantial contacts with the cause of the action [than does the District].' "

*Id.* at 163 (quoting *Dunkwu, supra* note 6, 575 A.2d at 295 (quoting in turn *Mills, supra,* 511 A.2d at 11)) (emphasis added). In its order the trial court did not engage in any analysis of whether the claim arose in Portugal or whether Portugal had more substantial contacts with the cause of action. In fact, the court stated that no alternative forum was suggested by the parties. The trial court therefore abused its discretion when it shifted the burden of proof to Coulibaly without engaging in the prerequisite analysis of which forum had more substantial contacts with the action. *See Johnson, supra* note 8, 398 A.2d at 365 (noting that a trial court abuses its discretion when it fails to consider all relevant factors).

appellate court to review that trial court decision as if he had requested it to be made in the entirely different context of litigating in the District as opposed to Virginia. *See Wright v. United States,* 508 A.2d 915, 920 (D.C.1986) (citing *Johnson v. United States,* 398 A.2d 354, 364 (D.C. 1979)). Accordingly, we do not consider his argument. Nor is he entitled to a remand now for consideration of a new ground for dismissal for forum non conveniens. If a discretionary

decision is requested, the movant is obligated to present the totality of the discretion that the trial court is being asked to exercise. There is no place for piecemeal treatment of such an issue. *See District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 182 (D.C.1993) (noting the well-established principle that "parties may not assert one theory at trial and another on appeal") (quoting *D.D. v. M.T.,* 550 A.2d 37 48 (D.C. 1988)).

■ This court has previously employed the *Mills* burden-shifting standard only where there is "virtually no link to this jurisdiction." *Neale, supra,* 683 A.2d at 163 (quoting *Kaiser Found. Health Plan v. Rose,* 583 A.2d 156, 160 (D.C.1990)). Taking the parties' allegations in the light most favorable to Coulibaly as the non-moving party, our review of the record indicates that the District of Columbia has more contacts with this litigation than does Portugal. Accordingly, the burden shifting rule of *Mills* is inapplicable to this case, and defendant has the burden of proof.

■ Second, regardless of which party had the burden of proof, the trial court was required to review each of the applicable *Gulf Oil* factors and balance the private and public interests in its analysis. *See Mills, supra,* 511 A.2d at 12 (addressing the *Gulf Oil* private/public factors analysis despite the fact that neither party was a resident of the District of Columbia). In *Smith, supra,* this court noted that "it is quite possible that in a given case we would affirm a trial court determination; whether it was to grant or to deny a motion to dismiss for forum non conveniens, so long as the trial court reasonably evaluated the motion in light of the relevant factors." 684 A.2d at 1289. Here, the trial court failed to do so. We are puzzled, for example, by the trial court's statement "that the fact that funds in question have been placed in a local bank two years ago does not help plaintiff to demonstrate why this litigation should remain in this jurisdiction." It is relevant that the money was deposited here, because that means that the District of Columbia would have been the place where Malaquias breached the contract and converted the money by keeping it in his bank account instead of performing the terms of the alleged contract or returning it when Coulibaly allegedly requested it. The only undisputed fact in this litigation, as Malaquias conceded in his summary judgment motion, is that "plaintiff did send defendant between June and September of 1994 $60,-000, chiefly *by wire to Defendant's bank account.*" The trial court's statement that "neither party has raised the issue of whether an alternative forum is available to plaintiff," is not supported by the record. Coulibaly strenuously argued that she did not have access to any other forum and that none of the possible alternatives had more significant contacts than the District of Columbia. In response, Malaquias argued that Portugal was an appropriate alternative forum. In light of their contrary contentions, the trial court was required to assess the propriety of an alternative forum before dismissing the lawsuit. *See Begum v. Auvongazeb,* 695 A.2d 112, 114 (D.C.1997)(" 'An essential predicate to invocation of the doctrine [of forum non conveniens] is the availability of an alternative forum.' ")(quoting *Mobley v. Southern Ry. Co.,* 418 A.2d 1044, 1047 (D.C.1980)).

■ Third, the trial court took into account an improper factor when it concluded that "the thrust of the entire defense is that the lawsuit, not the selection of the forum is intended to harass defendant." This is an inappropriate consideration. The concern expressed in *Gulf Oil* is not that plaintiff attempted to vex, harass or oppress the defendant by instituting the lawsuit—there are other doctrines to deal with that issue—but that plaintiff *chose the forum* in an attempt to vex and harass the defendant. *See Gulf Oil, supra,* 330 U.S. at 508, 67 S.Ct. 839. In any event, there is no support for either of these contentions in the record, other than Malaquias' bare assertions in his pleadings, and there is no reason evident on the record for the trial court to give his allegation credence over Coulibaly's denials. Moreover, it would appear that if Coulibaly were bent on choosing a forum for the purpose of harassing Malaquias, choosing Portugal would have been more vexing to Malaquias than the District, where Malaquias had an office and presently has a residence in nearby Virginia.

Finally, some of the factors the trial court relied upon in making its ruling were factually inaccurate or not supported by the record. For example, the money Coulibaly sent to Malaquias was not wired from Portugal as the trial court stated. Instead, Coulibaly while she was in Portugal directed her bank in Switzerland to wire the money to Malaquias' Citibank account in the District of Columbia. The bank statements that are part of the record reflect that the money was wired from

Switzerland. The court also stated that "there is no allegation that the money which was wired to a bank here is still here." To the contrary, in Coulibaly's motion she expressly noted that there was approximately $15,000 in Malaquias' District Citibank account, which could be used towards enforcing the judgment. Malaquias' deposition supported her contention.

■ We conclude that the trial court abused its discretion by not applying the correct legal standard, not considering all relevant factors, considering an inappropriate factor, and relying on facts not supported by the record. *See Johnson, supra* note 8, 398 A.2d at 365.

## V.

■ Ordinarily in such circumstances we would remand for an exercise of trial court discretion based upon proper factors. In this case, however, based upon our independent examination of the *Gulf Oil* factors, as applied to the facts of record, we conclude that the only permissible decision would be that the District of Columbia is not an inconvenient forum for this litigation and, indeed, that it is more convenient than Portugal. *See Wright, supra* note 8, 508 A.2d at 920. Turning first to the private factors, compared to Portugal, it is easier to access sources of proof in the District of Columbia. Aside from the testimony of the parties and witnesses regarding their oral agreement, the primary evidence is the bank records reflecting a wire transfer from Coulibaly to Malaquias' account located in the District of Columbia. Only one witness from Coulibaly's list, Coulibaly's brother, resides in Portugal; the only additional witness Malaquias has identified resides in Northern Virginia. Malaquias has submitted himself to the jurisdiction of this court and has not proffered the names of any "unwilling witnesses" this court cannot compel to appear before it. On the other hand, Coulibaly contends that at least one of the witnesses necessary to prove her case, Agostinho Santos, is an unwilling witness who would not be subject to process in Portugal, but would be subject to the court's subpoena power because he lives in Northern Virginia. The factor concerned with the possibility of viewing the premises does not favor Portugal as the only premises that conceivably could be of relevance is the apartment that Malaquias helped purchase for Coulibaly's daughter, which is located in the Washington metropolitan area, not in Portugal. As for the cost of obtaining the attendance of willing witnesses, in a case such as this, where witnesses are in different locations around the world, there will be logistical problems and the trial will be expensive no matter where it is held. It is up to the parties to suggest procedures to the trial court to streamline and hold down the costs of litigation. Coulibaly has proffered that all of the individuals named on her witness list are willing to appear before the court, including her husband, who lives in Switzerland, and her brother, who resides in Portugal. As discussed above, a judgment of the Superior Court in this case would be at least partially enforceable because, at least as of the time of his deposition, Malaquias acknowledged that he had a balance of between $5,000 and $15,000 in a bank account at a Citibank branch in the District of Columbia.

Finally, there is no evidence in the record, aside from Malaquias' assertion, that Coulibaly attempted to vex, harass or oppress him by choosing to sue him in the District of Columbia. To the contrary, suit in Portugal would appear to have been more vexing to Malaquias, who keeps residences in Northern Virginia and Canada and a business office in the District of Columbia. It is difficult to see how a suit here, rather than in Virginia where Malaquias belatedly claims the lawsuit belongs, would be any more vexing. Coulibaly reasonably chose to sue in the District of Columbia where at least part of the contract was to be performed, and where the funds were located.

In considering the public interest factors, we note that any additional case adds a burden to an already overburdened system; in and of itself, however, that cannot be a reason to bar a litigant from our courts. The second public factor, "the local interest in having localized controversies decided at home," has to be construed in the context of a city as international in character as the District of Columbia, where numerous for-

eign nationals travel, live, work and study. We would be hard-pressed to exclude the disputes of foreign nationals who come to the District of Columbia, particularly where, as here, their agreement entailed purchase of a residence and payment of academic pursuits in the area. We are not concerned about unfairness of imposing the burden of jury duty on our citizens, because the record does not show that either party requested a jury. *See* Super. Ct. Civ. R. 38(b) (any party may demand a trial by jury by "serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue"). The failure to serve and file a timely jury trial demand "constitutes a waiver by the party of trial by jury." Super. Ct. Civ. R. 38(d).

As to the last public interest factor, the avoidance of unnecessary problems in conflict of laws and interpretation of the laws of another jurisdiction, the parties disagree as to which jurisdiction's law is applicable to this case and whether there is a conflict with the law of the District of Columbia. Coulibaly argues that District of Columbia law governs both counts of her complaint, because 1) the oral contract was to secure a loan in the District of Columbia to be used towards the purchase of a townhouse in the Washington area; 2) the breach of contract took place in the District and 3) the tort of conversion also took place here, where her funds were deposited. Malaquias, on the other hand, contends that Portuguese law is applicable to the contract because the parties entered into the alleged contract in Portugal, and that District of Columbia law does not apply to the conversion count because the alleged conversion took place in Virginia. Even assuming Malaquias were correct, whether there is a clear conflict between the laws of Portugal and ours is an initial step in conflicts of law analysis. *Cf. Stutsman v. Kaiser Found. Health Plan of Mid–Atl. States,* 546 A.2d 367, 372 (D.C.1988) ("Given the clear conflict between the laws of the two jurisdictions, we must decide which jurisdiction has the greater interest in the application of its substantive law."); *see also Fowler v. A & A Co.,* 262 A.2d 344, 348 (D.C.1970) (noting that there

was no conflict of laws where "in this area of contract law, both Maryland and the District of Columbia are the same"). Malaquias, who has the burden to show why this is an inconvenient forum to litigate the action, has not to this day proffered any documentation, information or explanation regarding how Portuguese courts would handle this action or how the law of Portugal differs from District of Columbia law with respect to breach of contract and conversion. In his motion arguing for forum non conveniens dismissal, he merely noted that "[s]ince Portugal law should apply to this action, this Court should not be saddled with the burden of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction."

Beyond Malaquias' failure to satisfy his burden of proof, under Coulibaly's version of events the contract was to be performed in the District of Columbia, and its breach occurred here, leading to application of District of Columbia law. In construing a contract where the laws of two jurisdictions are involved, the forum applies the law of the state which has the " 'more substantial interest in the resolution of the issue.' " Fowler, supra, 262 A.2d at 348 (quoting *McCrossin v. Hicks Chevrolet, Inc.,* 248 A.2d 917, 921 (D.C. 1969)). As discussed above, as the District of Columbia has more significant contacts with the litigation than Portugal, District of Columbia law would be applicable to the contract claim.

District of Columbia law is also likely to govern the conversion claim because Coulibaly deposited the funds into Malaquias' bank account in the District of Columbia, she requested the return of the money once she was residing in the area and Malaquias refused to return it and continued to keep the money, presumably in his bank located in the District. *See First Am. Bank v. District of Columbia,* 583 A.2d 993, 998 (D.C.1990) (noting that conversion is the unlawful exercise of dominion or control over the personalty of another). Accordingly, the public interest factors do not "tip the balance in favor of a trial in a foreign forum." *Pain, supra,* 205 U.S.App. D.C. at 238, 637 F.2d at 784.

In conclusion, the trial court's dismissal for forum non conveniens was an abuse of discretion because: 1) it misapplied the *Mills* burden-shifting rule by failing to conduct a more substantial contacts analysis; 2) it did not take into consideration and properly apply all of the *Gulf Oil* factors; 3) it took into consideration an improper factor; 4) it relied on facts not supported by the record; and 5) it failed to consider what jurisdiction would provide an appropriate alternative forum.[9] Placing the burden of proof on Malaquias, we conclude that Malaquias failed to show that he was entitled to summary judgment for forum non conveniens.

*Reversed and remanded.*

9. Furthermore, the trial court erred in not making the dismissal properly conditional. Instead of requiring that Malaquias agree to waive any statute of limitations defense in the "new forum," the trial court noted that "plaintiff may seek reinstatement of the complaint if it is determined that other courts are legally unavailable or if defendant raises" the defense. The trial court made no effort to determine what would be an appropriate alternative forum nor to determine if the statute of limitations had expired in that alternative forum. *See Begum, supra,* 695 A.2d at 114 ("In *Mills,* we explicitly rejected the argument that if the claim was time-barred in the alternative jurisdiction when originally filed in the District, forum non conveniens will permit a dismissal without a waiver of statute of limitations by the defendant[.]").