Tomsene **BLAKE**, Appellant,

v.

**PROFESSIONAL TRAVEL CORPORATION, et al., Appellees.**

No. 99–CV–1495.

District of Columbia Court of Appeals.

Argued Dec. 1, 2000.
Decided March 8, 2001.

---

Patrick J. Massari, Washington, DC, for appellant.

Thomas P. Murphy, with whom Frederic Freilicher and Bruce D. Burkley, McLean, VA, were on the brief, for appellees.

Before SCHWELB, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

Blake appeals from an order of the trial court dismissing on the ground of forum non conveniens her complaint alleging, *inter alia*, sexual discrimination in violation of the District of Columbia Human Rights Act. We agree with Blake that the defendants have not met their burden of establishing reasons why her choice of forum should not be respected. In particular, the close factual connection between the District of Columbia and the discriminatory acts alleged, together with the absence of any genuine showing of inconvenience to the defendant-appellees, persuades us that this is not a proper case for application of the inconvenient forum doctrine. Therefore, although we recognize the deference generally accorded to the trial court on rulings of this kind, we reverse the order of dismissal and remand the case to the Superior Court for further proceedings.

## I. The Allegations

For present purposes, the allegations of the complaint must be accepted as true. *See Vincent v. Anderson,* 621 A.2d 367, 372 (D.C.1993). Blake's suit arises from her employment by defendant-appellee Professional Travel Corporation (PTC). A resident of Maryland at the time, Blake began working for PTC in its Arlington, Virginia office as a professional travel agent in May

1997.[1] PTC maintains its east coast regional headquarters in Arlington and does most of its local business from that location, but also has on-site offices and personnel at law firms and other organizations in the District of Columbia. Blake was interviewed and hired by defendant-appellee Sarah K. Boswell, a resident of the District of Columbia and Director of Operations for PTC's Arlington office at the time.

Blake alleges that in June 1998, Phyllis Reagan, a corporate Vice–President of PTC at the Arlington office, made sexual advances toward her at a bar in Virginia while in the company of other PTC employees. On succeeding occasions, Blake rejected further overtures from Reagan and received assurances from her that she would not be fired for doing so. Beginning in July 1998, according to the complaint, Boswell then engaged in a pattern of unwanted sexual advances and contact with Blake. Boswell initially scheduled an appointment with Blake, who was a registered massage therapist, for a massage at Boswell's home in the District of Columbia. After the massage the pair had lunch at a restaurant before returning to Boswell's home, where Boswell began fondling Blake's breasts and genitals. The two ultimately engaged in various sexual acts. On succeeding days Blake told Boswell that she did not want a sexual relationship with her, and Boswell responded by harassing and humiliating her in front of other PTC employees.

During the course of the next year, Boswell made numerous demands that Blake accompany her on lunch dates and other social events, including camping and ski trips. Blake acquiesced in these demands because Boswell had told her "explicitly and implicitly" that she "needed to do so to keep [her] job at PTC." In February 1999, Boswell invited Blake to a bar and restaurant in the District to discuss management-level positions that Blake had applied for at PTC, including one as on-site travel manager at two District law firms. Boswell then invited Blake to her home where she forced herself upon Blake sexually, causing Blake to have to push her way past Boswell and leave the house. Blake was ultimately denied the promotions she was seeking.

Blake further alleges that from July 1998 through June 1999 Boswell "continuously and repeatedly" telephoned her from Boswell's home in the District. In these calls, which often occurred five to seven times a week, Boswell demanded that Blake engage in sexual acts with her and accompany her socially to various locations. In one such conversation, Boswell stated that "as long as there's an us, you'll have a job at PTC," and in other conversations threatened changes in Blake's work schedule if she did not acquiesce in the sexual demands. In several phone conversations before Boswell rejected Blake for the on-site manager positions, Boswell told her that she was not "cooperating," and Blake replied that "[Boswell's] idea of cooperation included acts of sex and social companionship[,] which ... were unwanted and unwelcome."[2]

During the same one-year period, Blake accompanied Boswell to a variety of locations in the District where Boswell demanded sexual relations and engaged in unwanted touching of Blake's person.[3]

---

**1.** PTC is a travel agency incorporated and headquartered in Colorado, and a wholly owned subsidiary of defendant-appellee Navigant International, Inc. (Navigant), a Delaware corporation also headquartered in Colorado. Unless otherwise indicated, the corporate defendants will be referred to jointly as PTC.

**2.** Besides being denied the promotions in retaliation for having spurned Boswell's ad-

vances, Blake alleged that her frequent absences together with Boswell at lunchtime caused a hostile reaction on the part of other employees, compounded by the belief of those employees that she "was receiving preferential treatment in the workplace ... from Boswell."

**3.** According to Blake, on these occasions Boswell "would engage in unwanted touching, feeling, and caressing of my breasts and the

Meanwhile, the telephone calls from Boswell's home continued, showing a "marked increase" in June 1999 when Boswell demanded that Blake accompany her on a camping trip and other activities, which Blake refused. Finally, in June, Blake demanded that Boswell "should forever and finally cease from pressuring [her] for sexual favors."

On or about June 30, 1999, at a meeting attended by Blake, Boswell and Lynnette Heiges, the Human Resources Representative for PTC in Arlington, Boswell handed Blake a termination letter which she had written. The letter stated that Blake had been on probation since May 19, 1999, because of her inability to effectively service the account of The Federation of State Board Physical Therapy, a PTC client for which Blake was the primary designated travel agent. The letter purported to base Blake's termination on PTC's loss of this account in June 1999, and indicated that Blake's performance since May 19, 1999, was the reason the account had been lost. When Heiges mentioned that there was no probation letter in Blake's personnel file, Reagan became involved in the situation. She called corporate headquarters in Colorado and was informed that there was not a probation letter in Blake's file. Nevertheless, about a week later, Reagan left a voice message on Blake's home answering machine stating that she was going to abide by Boswell's decision to terminate Blake.

On the basis of these allegations, Blake sued PTC and Boswell in the Superior Court for sexual harassment, creation of a hostile workplace, and retaliation under the District of Columbia Human Rights Act, D.C.Code §§ 1–2501, *et seq.* ("DCHRA"), as well as for intentional infliction of emotional distress and interference with prospective economic advantage. The defendants jointly moved to dismiss, primarily on the grounds that the alleged discriminatory and retaliatory acts, especially Blake's termination, had not taken place in the District of Columbia, thus depriving the court of subject matter jurisdiction under the DCHRA. The defendants also argued that the District would be an inconvenient forum under D.C.Code § 13–425 (1995).[4]

In rejecting the first ground for dismissal, the trial judge noted particularly the defendants' failure

> to dispute plaintiff's allegations that many of the sexual activities about which plaintiff complains occurred in the District. There is no dispute that, as alleged on the face of the complaint, the corporate defendants are vicariously liable, on a *respondeat superior* theory, for the actions of the defendant Boswell. Many of the charged events are alleged to have taken place at Boswell's home in the District of Columbia. In addition, defendant Boswell, as agent for the corporate defendants, is alleged to have made numerous threatening and harassing phone calls from her home in the District of Columbia.

The court ruled that the numerous acts alleged to have occurred in the District established a basis for jurisdiction under the DCHRA, citing *Matthews v. Automated Business Sys. & Servs., Inc.*, 558 A.2d 1175, 1180 (D.C.1989) (in determining jurisdiction under the DCHRA, "the critical factual issue is whether these events [alleged in plaintiff's complaint] took place in the District.").

kissing of my face and neck, including ... holding my hand in the car and in public places; putting her arm around my waist and shoulders; kissing my face and neck; touching my breasts in the car." Blake "repeatedly reiterated ... my desire that she stop ... but she would not listen to me and persisted in these acts."

4. D.C.Code § 13–425 provides as follows: "When any District of Columbia court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss such civil action in whole or in part on any conditions that may be just."

The judge nonetheless dismissed the complaint on the ground of forum non conveniens. Considering the "private" and "public" factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the judge concluded that "Virginia has the closer ties to this litigation" in part because PTC's "business in the District of Columbia was limited, relative to the amount of business conducted in Virginia"; the decisions not to promote Blake and to terminate her were made in Virginia or at corporate headquarters in Colorado; and the "impact of the [sexual] harassment is alleged to have affected plaintiff on her job which was primarily in Arlington, Virginia." The judge also reasoned that Virginia would not be an inconvenient forum for Blake to litigate the case. In dismissing, the judge stated that she "[could not] conclude that plaintiff's choice of forum is more convenient than an equally available forum in a neighboring jurisdiction."

## II. Legal Standards

■ "Although the authority to dismiss for forum non conveniens is conferred by [D.C.Code § 13–425], this court has adopted the forum non conveniens analysis articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert, [supra]*." *Coulibaly v. Malaquias*, 728 A.2d 595, 600 (D.C.1999) (citations omitted). Under the *Gulf Oil* analysis, a court considers two categories of factors in deciding whether to dismiss for forum non conveniens: the "private interests" of the litigants and the "public interests" of the forum. *Id.* Once those factors are weighed against each other, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 601 (quoting *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839).

■ It is true that the residence of the plaintiff bears upon the respect accorded her choice: "When the plaintiff resides in another jurisdiction, we afford less deference to [her] choice of forum, particular-

ly where the defendant also does not live in the District of Columbia." *Id.* Ultimately, however, the defendant has the burden of proving that the District is an inconvenient forum unless "it is shown that neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action." *Id.* (quoting *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 11 (D.C.1986) (emphasis deleted)). Stated otherwise, the inquiry is not "[w]hether the District of Columbia is the best forum for this litigation," but rather "whether the District has so little to do with this case that its courts should decline to hear it." *Jimmerson v. Kaiser Found.*, 663 A.2d 540, 543 (D.C.1995) (quoting *Jenkins v. Smith*, 535 A.2d 1367, 1371 (D.C. 1987) (en banc)); *Auerbach v. Frank*, 685 A.2d 404, 410 (D.C.1996).

■ Although this court reviews a decision to dismiss on grounds of forum non conveniens for abuse of discretion, trial court rulings in this area receive closer scrutiny than most other exercises of discretion, in that we conduct an independent analysis of the public and private interests involved in the case. *Coulibaly*, 728 A.2d at 601; *Ussery v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.*, 647 A.2d 778, 780 (D.C.1994); *Jenkins*, 535 A.2d at 1369–70. We have interpreted this standard

> to mean that, first we apply "close scrutiny" to the specific factors identified and evaluated by the trial court; once we are satisfied that the trial court took the proper factors into account, we adopt a deferential approach in determining whether the trial court's decision fell within the "broad discretion" committed to it.

*Coulibaly*, 728 A.2d at 601. In the end, we ask whether the trial judge has "reasonably evaluated the motion in light of the relevant factors." *Smith v. Alder Branch Realty Ltd.*, 684 A.2d 1284, 1289 (D.C. 1996); *see Coulibaly*, 728 A.2d at 604.

### III. Discussion

█ In explaining why she rejected appellees' jurisdictional argument, the trial judge pointed to Boswell's numerous alleged acts of sexual coercion and harassment in the District of Columbia which formed the basis of Blake's complaint. Blake argues that those same actions, together with PTC's corporate presence in the District, its responsibility under the law for the acts of its supervisor Boswell, a resident of the District, and the defendants' failure to demonstrate any significant inconvenience in litigating this case in the District's courts, necessitate the conclusion that the judge abused her discretion in dismissing for inconvenient forum. We are compelled to agree.

### A. The Public Factors

Blake alleged that PTC, through Boswell, created a hostile work environment which extended beyond the office setting in Arlington where Blake primarily worked, to include a year-long off-hours relationship during which Boswell used her authority as office director and supervisor to attempt to coerce sexual favors. As the trial judge acknowledged, there is no question that this entire course of alleged conduct, much of which occurred in the District, would be relevant to Blake's claim of discrimination under the DCHRA. *See, e.g., Matthews, supra; Howard Univ. v. Best,* 484 A.2d 958, 976–84 (D.C.1984). Yet, in evaluating the "public factors" relevant to inconvenient forum analysis—essentially in asking whether "the District has so little to do with this case that its courts should decline to hear it," *Jimmerson, supra,*—the trial judge focused largely on the "impact" Boswell's actions had on Blake's employment, pointing to the fact that "[t]he decisions not to promote [Blake] and to terminate her were made in

Virginia or at corporate headquarters in Virginia."[5] We think this emphasis unduly truncated Blake's claim—which alleged both creation of a pervasively hostile work environment *and* retaliation for her rejection of Boswell's sexual demands—and thus diminished the weight of the contacts between her suit and the District of Columbia.

The trial judge also determined that PTC's "business in the District of Columbia was limited, relative to the amount of business [it] conducted in Virginia." Although that is true, the judge did not conclude, nor do we think she reasonably could have, that Virginia's interest in enforcing its laws against job discrimination would exceed the District's in enforcing the DCHRA on facts such as this case alleges. Boswell was a resident of the District of Columbia; much of the alleged use of her superior position to coerce favors originated from her home; and her status as a PTC director and supervisor is what implicates the corporation in conduct forbidden by the District's anti-discrimination statute. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 762, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (a "tangible employment action," which is "the means by which [a] supervisor brings the official power of the enterprise to bear on subordinates[,] ... becomes for Title VII purposes the act of the employer").[6]

For these reasons, none of the *Gulf Oil* public factors can reasonably be said to have warranted dismissal of Blake's suit. It is not a controversy "local" to Virginia which that state has a paramount interest in resolving; it will not burden the Superior Court with the "congest[ion of] foreign litigation"; and it will not unfairly impose on District citizens the duty to adjudicate a matter "having no relation to" the District

---

5. The judge might also have been referring to Blake's claim that her apparent close relationship to Boswell generated a hostile reaction on the part of her co-employees in the Arlington office. See note 2, *supra.*

6. *See, e.g., Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 888 n. 31 (D.C.1998) (noting that this court generally looks to Title VII of the Civil Rights Act of 1964 in interpreting the DCHRA).

of Columbia. *Coulibaly,* 728 A.2d at 601. Whatever its ultimate merits, Blake's suit alleging a sustained pattern of sexual harassment in the District by a senior officer of PTC who resides in the District is one that reasonably invokes the resources of the District of Columbia courts.

## B. The Private Factors

Dismissal might nonetheless have been warranted if the private factors of *Gulf Oil* militated in favor of another forum. *See, e.g., Forgotson v. Shea,* 491 A.2d 523, 526–28 (D.C.1985) (affirming dismissal of suit by Maryland resident against New York partnership, despite fact that plaintiff worked in District office of the partnership, where most partners lived and worked in New York and would suffer hardship if required to litigate in the District). In this case, however, witnesses and evidence will be at least as available in the District as in Arlington,[7] and PTC maintains a significant presence in the District. The most the trial judge could say in this regard was that "[i]n terms of ease, expense and expedience, it appears that the *more* convenient forum is Virginia" (emphasis added). But that conclusion applies an erroneous standard when, as here, the public factors weigh in favor of retaining jurisdiction of the case, for "[t]he 'purpose of the [inconvenient forum] doctrine ... is to avoid litigation in *a seriously inconvenient forum,* rather than to ensure litigation in the most convenient forum.'" *Cresta v. The Neurology Ctr., P.A.,* 557 A.2d 156, 161 (D.C.1989) (citation omitted; emphasis by *Cresta* ); *see Hechinger Co. v. Johnson,* 761 A.2d 15, 20 (D.C.2000) (same).

Indeed, the most serious risk of "inconvenience" would appear to be to Blake's claim under the DCHRA if she cannot litigate it in the District. Both parties acknowledge the uncertainty of whether a Virginia court would entertain a claim under the DCHRA. *See Sartori v. Soc'y of Am. Military Eng'rs,* 499 A.2d 883, 889 n. 9 (D.C.1985) (noting but not attempting to answer question of whether Virginia courts would entertain cause of action based on the DCHRA). The trial judge shared this concern, but reasoned that Blake could pursue the DCHRA claim or an equivalent one, *i.e.,* under Title VII, in the Virginia courts and then seek to reinstate her suit in the District if the relief afforded her there proved inadequate. When, however, the District's connection with the acts generating the claim is as sizable as we have seen it to be in this case, that analysis puts the cart before the horse.[8] Blake should

---

7. Indeed, arguably the two most important witnesses, Blake and Boswell, live in Maryland and the District, respectively. In addition, while Virginia's power to compel attendance of witnesses at trial stops at the District line, the Superior Court's subpoena power extends well into Virginia and Maryland. *See* D.C.Code § 11–942(a) (1995) ("A subpena [sic] may be served ... at any place without the District of Columbia that is within twenty-five miles of the place of the hearing or trial specified in the subpena [sic]."); *see also Smith,* 684 A.2d at 1290 n. 3 (finding that D.C.Code § 11–942(a) argues in favor of retaining jurisdiction in the District). As for "ease of access to sources of proof," *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839, the record is vague as to the amount and types of documents that will be relevant, but no contention is made that they will be so numerous that the parties would have difficulty bringing them from Arlington to the District. And the District would be as convenient as Virginia in obtaining any documents located in Colorado.

8. Blake argued, moreover, that she would be unable to sue Boswell individually in Virginia since Title VII does not recognize individual claims against supervisors. *See Lissau v. Southern Food Serv. Inc.,* 159 F.3d 177, 180–81 (4th Cir.1998) (supervisors are not liable in their individual capacities for Title VII violations); *Gary v. Long,* 313 U.S.App. D.C. 403, 411, 59 F.3d 1391, 1399 (1995) (same). *See,* by contrast, *Wallace v. Skadden, Arps, Slate, Meagher & Flom, supra* note 6, 715 A.2d at 888 (supervisors can be individually liable under the DCHRA). Blake argued too that any Title VII claim would be subject to a statutory damages cap, which is not the case under the DCHRA. *See* 42 U.S.C. § 1981a (b)(3) (capping damages according to the size of the employer). Although we do not evaluate these contentions, they complicate the issue of whether relief commensurate with her

not have to exhaust her remedies, so to speak, in Virginia before seeking recourse here from alleged discrimination grounded so heavily in local activity.

The judgment of the Superior Court is, therefore,

*Reversed.*

---

alleged injury would be available to her in Virginia. *See Coulibaly,* 728 A.2d at 601 (quoting with approval *Pain v. United Technologies Corp.,* 205 U.S.App. D.C. 229, 238, 637 F.2d 775, 784 (1980) (as prerequisite to dismissal for inconvenient forum, "the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case")).