**NIXON PEABODY LLP, et al., Appellants,**

v.

**Lawrence K. BEAUPRE, Appellee.**

**No. 00–CV–1485.**

District of Columbia Court of Appeals.

Argued Nov. 1, 2001.
Decided Feb. 7, 2002.

---

John M. Bray, with whom James D. Miller, John D. Shakow, and Jeffrey S. Bucholtz, Washington, DC, were on the brief for appellants Nixon Peabody LLP, Robert C. Bernius, and Henry J. DePippo.

Thomas C. Green, with whom Mark D. Hopson, Kristin Graham Koehler, and Jennifer M. Rubin, Washington, DC, were on the brief for appellants Gannett Co., Inc., Thomas L. Chapple, Barbara W. Wall, Gannett Satellite Information Network, Inc., The Cincinnati Enquirer, and Cameron McWhirter.

Samuel H. Seymour, Washington, DC, with whom Bardyl R. Tirana, was on the brief, for appellee.

Before RUIZ and REID, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

In a complaint filed in Superior Court alleging breach of contract, breach of fiduciary duties, and other tortious acts, appellee Lawrence K. Beaupre, a former editor of *The Cincinnati Enquirer* newspaper, sued the *Enquirer*, Gannett Satellite Network, and other parties for actions, which he asserts, ultimately caused the unlawful

termination of his employment and other consequential injuries. This appeal is from a denial of a joint motion to dismiss the action on the basis of *forum non conveniens.*[1] Appellants contend that the trial court erred by giving undue deference to the choice of forum of a non-resident plaintiff; disregarding the factual evidence that nearly all material witnesses reside in Ohio; holding that the District has a strong interest in this case; and engaging in an unnecessary and inappropriate conflict-of-laws analysis. We affirm.

## I. Factual Background

■ For present purposes, the allegations of the complaint must be accepted as true. *Blake v. Professional Travel Corp.,* 768 A.2d 568, 569 (D.C.2001). Appellee Beaupre was vice president and editor of *The Cincinnati Enquirer* (*Enquirer*), an Ohio newspaper owned by Gannett Co., Inc. (Gannett). Gannett is a Delaware corporation with headquarters in Arlington, Virginia and operations nationwide. Two *Enquirer* journalists, Michael Gallagher (Gallagher) and Cameron McWhirter (McWhirter), conducted a year-long investigation into the business practices of Chiquita Brands International, Inc. (Chiquita). Chiquita is a New Jersey corporation with its principal place of business in Cincinnati, Ohio. Chiquita threatened to sue the *Enquirer* as early as August 24, 1997. Thereafter, Gannett retained the services of Nixon Peabody, a law firm with offices in Washington, D.C. Prior to publication, appellee provided drafts of a series of articles written by Gallagher and McWhirter for review. The articles were reviewed by Gannett executives, counsel in Arlington, and Nixon Peabody attorneys in Washington. The drafts reviewed by counsel contained excerpts of Chiquita voice mail messages, obtained by Gallagher. These excerpts were included in the final version of the articles. Appellee discussed questions surrounding the articles with Gannett executives, in-house counsel, and Nixon Peabody attorneys. On May 3, 1998, the *Enquirer* published articles regarding Chiquita.

Following publication of the articles, litigation was again threatened. As a consequence, Gannett and Chiquita entered into settlement discussions. Chiquita was represented by the Washington office of Kirkland & Ellis. Gannett was represented by Nixon Peabody, led by Robert C. Bernius (Bernius), and Gannett's in-house counsel. Ultimately, Gannett fired Gallagher and a settlement agreement was executed on June 27, 1998. The parties to the agreement were Chiquita, Gannett, Gannett Satellite, *Enquirer,* McWhirter, and appellee. Chiquita withdrew its threat of litigation in exchange for a public apology, monetary benefits, and an agreement that appellee and McWhirter would not write about Chiquita in the future. Appellee alleges that Gannett and Chiquita entered into a secret agreement to remove him from his position of editor-in-chief.

Following the settlement, an internal investigation and report that placed responsibility on appellee for the Chiquita controversy was completed by in-house counsel and Nixon Peabody. Appellee alleges he was "scapegoated" in an effort to protect senior Gannett executives, as well as the drafters of the report, from criminal prosecution. At the same time as settlement negotiations occurred, a criminal investigation commenced in Ohio. Gallagher pleaded guilty to two felony offenses. Henry J. DePippo (DePippo), a Nixon Peabody attorney from the New York office, was lead counsel in the representation of Gannett in the criminal investigation. Nixon Peabody

---

1. Chiquita Brands International, Inc. is not a party to this appeal.

also acted as appellee's attorney, providing legal counsel during the criminal investigation until appellee was named a target of the grand jury investigation. Ultimately, no charges were brought against appellee. In November 1998, appellee was transferred to Gannett headquarters in Virginia. He was promised a new executive position at headquarters, and later an editor's position with one of seventy other newspapers when one became available. In January 2000, Gannett placed appellee on administrative leave and fired him in April 2000.

On April 13, 2000, appellee filed this action against appellants and Chiquita. The complaint alleges fraud, conspiracy to injure reputation and profession in violation of a Virginia conspiracy statute, tortious interference with prospective economic advantage, breaches of fiduciary duties and contracts, and attorney malpractice. In Count IX, appellee seeks a declaratory judgment against all of the parties who signed the settlement agreement, which would invalidate the clause in the settlement agreement prohibiting appellee from writing about Chiquita. During the course of pre-trial proceedings, appellants unsuccessfully sought dismissal of the action on the grounds of *forum non conveniens*. They presently appeal the decision which was adverse to them.

## II. Legal Standards

■ This court permits interlocutory appeals from orders denying a motion to dismiss for *forum non conveniens*. *See Smith v. Alder Branch Realty Ltd.*, 684 A.2d 1284 (D.C.1996) (citing *Frost v. Peoples Drug Store*, 327 A.2d 810, 812–13 (D.C.1974)). The review of a motion to dismiss on the grounds of *forum non conveniens* is two fold. Initially, this court independently evaluates the pertinent factors. "[T]his 'independent evaluation' is not to be confused with *de novo* review.

Rather, 'we apply close scrutiny to the specific factors identified and evaluated by the trial court.'" *Eric T. v. National Med. Enters.*, 700 A.2d 749, 754 (D.C.1997) (citing *Smith, supra*, 684 A.2d at 1287). The specific *forum non conveniens* analysis articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) has been adopted by this court. *See Blake v. Professional Travel Corp., supra*, 768 A.2d at 568, 572; *Coulibaly v. Malaquias*, 728 A.2d 595, 600 (D.C.1999). *Gulf Oil* identifies private interest of the litigants and public interest of the forum as factors which should be considered in *forum non conveniens* cases. *See Gulf Oil Corp., supra*, 330 U.S. at 508, 67 S.Ct. 839. In *Future View, Inc. v. CritiCom, Inc.*, 755 A.2d 431, 433 (D.C.2000) (citing *Kaiser Found. Health Plan v. Rose*, 583 A.2d 156, 158 (D.C.1990)), these factors are summarized:

> [T]he pertinent private interest factors include (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the ease of access to sources of proof; (4) the availability and cost of compulsory process; and (5) the enforceability of any judgment obtained. The public factors include: (1) the clearance of foreign controversies from congested dockets; (2) the adjudication of disputes in the forum most closely kinked thereto; and (3) the avoidance of saddling courts with the burden of construing a foreign jurisdiction's law.

■ Once this court is satisfied that the trial court took the proper factors into consideration, reversal of trial court rulings on *forum non conveniens* motions is only appropriate when there is a showing that the trial court abused its broad discretion. *See Jenkins v. Smith*, 535 A.2d 1367, 1369 (D.C.1987) (en banc). "'Where the [trial] court has considered all relevant

public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Eric T., supra,* 700 A.2d at 754 (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

■ This court pays particular attention to the trial court's articulated reasons for reaching a decision on *forum non conveniens. See Smith, supra,* 684 A.2d at 1287. Notwithstanding that deference is given to the trial court in deciding a motion to dismiss on the grounds of *forum non conveniens,* such deference is not unlimited, as exhibited by relevant case law. *Dunkwu v. Neville,* 575 A.2d 293 (D.C. 1990) involved a claim by a Virginia resident against a doctor who practiced in Virginia and the District of Columbia. She alleged negligence in the obstetrical care and delivery of an infant daughter. In reversing the denial of a motion to dismiss on the grounds of *forum non conveniens,* this court stated that "[a]t no time [was] the plaintiff seen, examined or treated in the District of Columbia." *Id.* at 294. We stated that "the unusual step of reversing a discretionary decision" is necessary to prevent the promulgation of a rule that permits a motion "to be defeated by a showing of very little more than the plaintiff chose the courts of the District of Columbia as her forum." *Id.* at 294. *Wyeth Labs., Inc. v. Jefferson,* 725 A.2d 487 (D.C.1999), involved a product liability claim filed by four Maryland residents. We found the trial court erred in denying the motion to dismiss on the grounds of *forum non conveniens,* as none of the events that gave rise to the claims occurred in the District, and the trial court did not articulate its reasons for denying appellant's motion. *Id.* at 491–92 n. 9. We said: "when neither party resides in the District and the plaintiff's claim has arisen

in another jurisdiction, the burden shifts to the plaintiff to justify bringing suit in the District rather than in the forum more significantly connected to the case." *Id.* at 491. *See also, Eric T., supra,* 700 A.2d at 754 ("where it is shown that neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action, the burden normally allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens* rests instead upon the plaintiff to show why it is not" (citation omitted)); *see also Kaiser Found. Health Plan v. Rose,* 583 A.2d 156, 156–57 (D.C.1990) (dismissal conditioned on waiver of statute of limitations defense as the sole connection between the District and the events which precipitated the lawsuit was that appellants were incorporated in the District); *cf. Mills v. Aetna Fire Underwriters Ins. Co.,* 511 A.2d 8, 12 (D.C.1985) (conditional dismissal when the only connection with the District was the fact that the defendant was licensed to do business in the District). Thus we have constructed a balance of factors which inform the discretion entrusted to a trial judge in deciding a question of this kind. As stated, we review such decisions under an abuse of discretion standard. *Eric T., supra,* 700 A.2d at 754.

### III. Analysis
#### (A)

■ In pursuing their claims of error with respect to *forum non conveniens,* appellants' contentions in this court are consistent with those asserted in the trial court. They argue that the trial judge abused her discretion by giving undue deference to the choice of forum of a nonresident plaintiff. In addition, they urge that the judge erred by disregarding an affidavit by Bernius indicating that numerous material witnesses reside in Ohio; they also urge that the judge wrongfully

concluded that the District had a strong interest in the litigation. Lastly, it is argued that the judge's consideration of issues involving conflicts-of-laws was unnecessary.

In addressing the motion to dismiss, the trial judge identified eight pertinent private interests factors. The judge considered the plaintiff's choice of forum, and concluded that the plaintiff's choice was reasonable in view of specific events asserted in the complaint to have taken place in the District of Columbia. She reached this conclusion even though appellee was entitled to less deference since the trial court recognized he was not a resident of the District. In analyzing the relative ease of access to sources of proof, she concluded that all the parties would have reasonable access to the necessary evidence, notwithstanding that the events and parties in the case were spread out geographically. She found that another jurisdiction would have no better access. As to the availability of compulsory process for attendance of unwilling witnesses, the court stated that "the key testimony is to be found within the range of the Court's subpoena power" and "an Ohio court would have equal or greater difficulty in securing the testimony of necessary witnesses." Evaluating the cost of obtaining willing witnesses, the court found that:

> the potential witnesses in this case are spread between Washington, D.C., Virginia, and Ohio. If this case proceeds in a court in any of these jurisdictions, there will inevitably be some degree of inconvenience in getting witnesses before the Court.... [S]ince Mr. Beaupre's claims arise from the conduct of the lawyer defendants and Gannett executives principally located in the District of Columbia and Virginia, most willing witnesses would have access to this Court at minimal cost.

In addition, the court considered other practical problems concerning the case: expedition and expense of the trial, the enforceability of a judgment once obtained, evidence that the plaintiff attempted to vex, harass or oppress the defendants by his choice of forum, and the overall relative advantages and obstacles to a fair trial. Having reviewed these private factors, the court concluded "that consideration of the private interest in this case weighs decidedly in favor of maintaining this Court as the forum for Plaintiff's claims."

The trial court also identified four public interest factors: administrative difficulties caused by local court dockets congested with foreign litigation, the local interest in having localized controversies decided at home, the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation, the avoidance of unnecessary problems of conflict of laws and in the interpretation of the laws of another jurisdiction. The court stated:

> [t]his case involves many events which span several states over a period of years. Much of the conduct at the heart of the present case, however, involves the use of attorneys licensed and practicing in Washington, D.C. to engage in allegedly tortious conduct, supposedly in breach of contractual and professional duties. Accordingly, this case cannot be characterized as foreign litigation that would be a waste of District of Columbia resources.

The judge concluded, after weighing the public interests of the forum and private interests of the litigants, that "the balance is not strongly in defendants' favor and the plaintiff's choice of forum should not be disturbed."

### (B)

 Appellants strongly urge that the trial court erred by giving undue deference

to the choice of forum of a non-resident plaintiff. "[I]n both *Mills* and *Dunkwu* we were explicit in stating that the burden shifts to the plaintiff only where the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action [than does the District]." *Neale v. Arshad,* 683 A.2d 160, 163 (D.C.1996) (internal quotations and citation omitted). The trial court found that at least some of the significant alleged events—tortious conduct and breach of contractual and professional duties—occurred within the District of Columbia. "Unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 162–63 (internal quotation and citations omitted). Stated another way, "a defendant who invokes the doctrine of *forum non conveniens* bears the burden of establishing a case for dismissal." *Id.* at 163 (citation omitted). Despite a determination that appellee was entitled to less deference than a resident of the District, his choice of forum should stand since the public and private factors were in his favor. We conclude that the judge did not give undue deference to appellee's choice of forum.

Appellants also contend the trial court erred by disregarding factual evidence that nearly all material witnesses reside in Ohio, as supported by the affidavit of Robert C. Bernius.[2] The Bernius affidavit names twenty-seven witnesses whom appellants characterize as necessary for the defense of this action. The trial court

considered the affidavit and concluded that the document did not demonstrate "that another court would have greater access to the necessary evidence and witnesses." We agree. While the Bernius affidavit describes the testimony that each witness would give, beyond the assertion that they all live in Ohio, it does not show that appellants could not obtain the willing cooperation of the witnesses, or alternatively, depose them prior to trial.

Lastly, appellants argue that taking into account events that occurred in Virginia, the trial court erred by holding that the District has a strong interest in this case simply by relying on the events that occurred in Virginia. On February 20, 2001, in a supplemental order the court flatly rejected that assertion.[3]

Applying our standard of review to this case, we observe that the trial judge was required to consider and balance all the relevant private and public interest factors identified in *Gulf Oil, supra.* The trial court did so. In considering the public interest factors, the court confronted the question whether the action could fairly be characterized as a foreign litigation. She viewed the underlying cause of action as occurring largely in the District of Columbia, and therefore not a case of foreign litigation. Her conclusion is a reasonable one, as much of the conduct involves alleged tortious action and breaches of contractual and professional duties by attorneys practicing in the District of Columbia.[4] Upon review of these

---

**2.** Bernius, as a named defendant, is not a disinterested party.

**3.** The court stated:

It is a bizarre mischaracterization of the Court's holding to suggest that the Court concluded that the underlying events in this dispute occurred in Virginia. The Court, of course, made no such holding.... [T]he Court agreed with the Defendants that Vir-

ginia had a weak connection to the matter and dismissed Count II of the Complaint on that basis.

**4.** The appellants contend that the trial court erred by engaging in an unnecessary and inappropriate conflict-of-laws analysis. Weighing the possible conflicts of law can be part of the evaluation of a public interest factors. While it is not necessary for the trial court to

findings and conclusions made by the trial judge, we conclude that the pertinent factors were considered and applied in a manner consistent with the holdings and tenor of our existing decisions. Accordingly, finding no abuse of discretion by the trial judge, we uphold the order denying the motion to dismiss.

*Affirmed.*

reach a conclusion on conflict of law issues to reach a decision on *forum non conveniens,* it is decidedly not error to undertake such an analysis. We note, however, that in this interlocutory appeal we do not consider the merits of the trial court's conflicts of law analysis.