Jeff JACOBSON, M.D.,
et al., Appellants,

v.

Sardul Singh PANNU and Surinderjit
Grewal Pannu, Appellees.

No. 02–CV–251.

District of Columbia Court of Appeals.

Argued April 2, 2003.

Decided May 8, 2003.

Brian J. Nash, and Leonard W. Dooren for appellants.

Bruce J. Klores, Washington, DC, and Patricia C. Karppi for appellees.

Before RUIZ and REID, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

This is another medical malpractice case in which a patient sues in the District of Columbia, where the doctor regularly practices, and the doctor moves to dismiss on "inconvenient forum" grounds because the alleged negligence took place in a Maryland hospital. Of obvious significance in the litigation strategy of each party is the fact that Maryland law requires the patient, first, to consider arbitration and, in any event, to accept a cap on recovery,[1] whereas District of Columbia law imposes no such barriers. It often is unclear in such cases, under choice of law rules, whether District or Maryland law would govern. But litigants tend to believe that they have a better chance to invoke a particular substantive law if they litigate in the forum where that law normally is applied. As a result, patients almost always want to sue in the District; doctors almost always want to defend in Maryland.

In some of these cases the District of Columbia may be "inconvenient" for the doctor because the District's courts, unlike

1. MD. CODE ANN., CTS. & JUD. PROC. § 11–108 (2003).

those of Maryland, may lack jurisdiction over a Maryland party, such as a hospital, which the doctor desires to implead as a third-party defendant allegedly responsible, or jointly so, for the claimed negligence.[2] Or the doctor sued in the District may be prejudiced by an inability to subpoena witnesses or documents located in Maryland. In the present case, however, these limitations on the reach of our local courts is absent. The doctor mentions no third-party claims, nor does he seek witnesses or documents beyond the twenty-five-mile limitation on a District of Columbia court's subpoena power.[3] Because the alleged negligence took place at Suburban Hospital in nearby Bethesda, Maryland, the geographical universe here is limited to commuter distance inside the Washington area beltway.

This is the context, then, in which the trial court applied the standard factors governing inconvenient forum analysis. The court denied the doctor's motion to dismiss, leaving the case in this court system. For reasons that follow, we affirm.

## I.

The principal plaintiff, Dr. Sardul Singh Pannu (the patient), began to suffer intense lower back pain and radiating pains in his legs. He took the problem to Jeff Jacobson, M.D. (the doctor) at the doctor's principal place of business, 3 Washington Circle, N.W., Washington, D.C. After a full examination there, the doctor recommended a diagnostic MRI, which took place in the doctor's Bethesda, Maryland office, followed by back surgery that the doctor performed at Suburban Hospital. The patient eventually sued for malpractice, alleging permanent incontinence of bowel and bladder caused by the doctor's negligence in severing four nerves.

In moving to dismiss, the doctor notes that the patient and his wife (who is a coplaintiff claiming loss of consortium) are residents of Maryland, as is the doctor himself; that the alleged negligence took place entirely in Maryland; that all relevant records are in Maryland; that the patient's pre-operative consultation and post-operative rehabilitation in the District of Columbia lack legal significance because they were not part of the claimed negligence; and that Maryland's substantive law applies—law better administered by a Maryland court.

In response, the patient stresses that although the doctor himself may live in Maryland, the corporate codefendants who employed him during the period of the patient's injuries had been organized—and their corporate affairs continued to be governed—under District of Columbia law. Even more significantly, says the patient, the doctor and his corporate employers use the District of Columbia as their principal place of business, as evidenced not only by their letterhead specifying 3 Washington Circle, N.W. as the "main office and mailing address," but also by the doctor's privileges in five hospitals, four located in the District. The fortuity that the operation took place in the fifth hospital, in Maryland, he argues, should not obscure the fact that the doctor and his corporate codefendants comprise, fundamentally, a District of Columbia enterprise. Indeed, emphasizes the patient, the doctor's highly visible presence in the District was a factor affecting his choice of physicians; the initial consultation there cemented the doctor-patient relationship that led to the surgery; and his relationship with the doctor

---

**2.** *E.g., Ussery v. Kaiser Found. Health Plan,* 647 A.2d 778, 782 (D.C.1994).

**3.** *See* D.C.Code § 11–942(a) (2001); D.C.Super. Ct. Civ. R. 45(b)(2) (2002).

generated the referrals after surgery that established the patient's rehabilitation in a District of Columbia facility. Accordingly, concludes the patient, the doctor's treatment of his medical problem embraced pre-operative and post-operative actions in the District, immediately before and immediately after the operation in Maryland— all integral parts, he says, of a treatment regime embracing both jurisdictions, not just Maryland.

The patient also notes that, given the District's trial court subpoena power, the doctor and his co-defendants allege no unavailability of witnesses or of relevant records if the case remains in the District. Finally, adds the patient, although admittedly he is a Maryland resident, he has strong District of Columbia connections attributable to his thirty-three-year employment as a professor of chemistry at the University of the District of Columbia.

These are the respective factual bases for the parties' arguments that the District's forum is, or is not, "inconvenient." We turn to the legal analysis by which they must be tested.

## II.

■ Denial of a motion to dismiss on grounds of inconvenient forum is an appealable order,[4] which we review for abuse

of discretion.[5] But rather than according the usual deference to trial court discretion when review is for abuse, the law requires us to apply a "closer scrutiny" of the court's ruling, meaning some unclear amalgam of deference limited by our independent judgment of whether the relevant factors have been applied.[6] Our review thus is not de novo, but it does not allow the trial court the margin of error that the term "discretion" ordinarily signifies. See Coulibaly v. Malaquias, 728 A.2d 595, 601 (D.C.1999).

■ The trial court first must evaluate and apply so-called "private" factors followed by assessment of prescribed "public" factors.[7] The specifics of both categories are listed in the margin.[8] Here, the trial court declined to dismiss after according determinative weight to facts the judge found were undisputed: plaintiff was employed in the District; the patient-physician relationship began here; the corporate defendants were organized, and have their principal place of business, in the District; the doctor was licensed to practice in the District and had his principal place of business here; the three defendants were served in the District; the patient received medical care for his injuries in the District (meaning care, it would appear, before and after the claimed negli-

4. *Medlantic Long Term Care Corp. v. Smith,* 791 A.2d 25, 29 n. 3 (D.C.2002).

5. *Id.* at 28.

6. *Id.* at 28–29.

7. *Wyeth Labs., Inc. v. Jefferson,* 725 A.2d 487, 491 (D.C.1999).

8. The factors have been stated many times, in slightly varied ways. The following passage fairly embraces the concepts that concern us:

The private factors include potential obstacles to a fair trial, including the relative

ease of access to proof, the availability and cost of compulsory process, the enforceability of any judgment obtained, and evidence of vexatiousness or harassment.... The public factors are those affecting the District's own interests, including the congestion of its court dockets with foreign litigation, the imposition of jury duty on District residents for litigation in which the District has no concern, and the inappropriateness of calling on District of Columbia courts to construe the law of another jurisdiction. *Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)); *accord Coulibaly,* 728 A.2d at 600–01.

gence); and "the alleged negligent care and treatment occurred in Maryland." [9] The trial court then stated that it had "weighed and balanced" the public factors, as well as the private ones, and concluded summarily that all factors taken together did "not weigh in favor of dismissal" of the patient's action.[10]

As to the private factors, the trial judge appears to have accepted the patient's analysis, weighing most heavily—as do we—the fact that the doctor's and his co-defendant-employers' medical service was, fundamentally, a District of Columbia operation. This is not a case such as *Ussery v. Kaiser Found. Health Plan*, 647 A.2d 778 (D.C.1994), where the patient's employment and the medical defendant's corporate status were the only significant District of Columbia connections while 88% of its business was in other jurisdictions,[11] and where the defendant would have been prejudiced in a District of Columbia forum by its inability to implead a third-party Maryland defendant. Other cases, too, ruling a forum inconvenient are similarly distinguishable.[12] The present case, rather, as to private factors, is akin to *Smith v. Alder Branch Realty*, 684 A.2d 1284, 1288 (D.C.1996), where we affirmed denial of an

inconvenient forum motion primarily because of the defendants' substantial business in the District of Columbia. There are no issues of "access to proof" or "compulsory process," "enforceability of any judgment," or "vexatiousness" or "harassment." We are satisfied that the private factors do not push the doctor's case over the Maryland line.

At oral argument, moreover, counsel representing the doctor and his employers acknowledged that the defense was relying less on private factors than on public interest factors, none of which, counsel stresses, the trial court applied with specificity. We agree with counsel that the trial court should have done so, although in *Wyeth Labs., Inc. v. Jefferson, supra* note 12, where the judge similarly eschewed detail, we used our heightened review of trial court discretion in these cases to apply the public factors ourselves in ruling that the trial court erred as a matter of law.[13] Here, a public-factor analysis does no more to help the doctor and his codefendants than a private-factor analysis. They have proffered no administrative difficulties attributable to District of Columbia court dockets congested with foreign litigation (if indeed this could be called foreign

9. Order Denying Defendant's Motion to Reconsider or Clarification of Denial of Motion to Dismiss[

10. Id.

11. We do not understand *Ussery* to preclude a District of Columbia forum if, for example, a defendant's business in the District, while only 12% of total volume, reflects a huge dollar volume.

12. *See, e.g., Carr v. Bio–Medical Applications of Washington, Inc.*, 366 A.2d 1089 (D.C. 1976) (affirming dismissal of District resident's wrongful death action for inconvenient forum when all defendants resided elsewhere and all tortious acts took place in Maryland); *Wyeth Labs., Inc. v. Jefferson*, 725 A.2d 487

(D.C.1999) (reversing denial of motion to dismiss for inconvenient forum where plaintiffs were Maryland residents, defendant was New York corporation with principal place of business in Pennsylvania, and parties stipulated that no act giving rise to liability took place in District of Columbia).

13. In doing so, we do not rule as a matter of law that the District is "convenient" here. On the other hand, if the trial court summarily had granted the doctor's motion to dismiss on this record, *cf. Coulibaly, supra*, we would have remanded with instructions to explain the decision more fully before we finally ruled, because the facts—without an interpretive gloss not presently evident—would not warrant a summary grant of the doctor's motion.

litigation); whatever public interest there may be in having "localized controversies decided at home" presupposes (under the doctor's theory) a localized Maryland controversy—a characterization that the facts here do not assuredly sustain. Similarly, one cannot say that this case necessarily would impose jury duty on District citizens in a matter having no real relation to the District forum; the Superior Court has unchallenged jurisdiction over a complaint here against medical defendants having their principal place of business—and thus, it would appear, most of their medical business—here. Finally, the courts of the District routinely adjudicate disputes among citizens of the District, Maryland, and Virginia where choice of law and conflicts of law issues abound. In this case, for example, although the alleged negligence occurred in a Maryland hospital, there is no agreement as to whether the law of the District or the law of Maryland applies on the particular facts presented—an issue that either court system would have to resolve. But even if Maryland's substantive law does control, no one disputes that the courts of the District of Columbia apply Maryland law almost every day; we are not dealing with a case involving possible peculiarities of state law from a geographically distant jurisdiction rarely addressed here.

This case, really, boils down to a claim that because the patient is a resident of Maryland and the particular acts of negligence allegedly giving rise to the doctor's and his codefendants' liability took place exclusively in Maryland, the District of Columbia is an inconvenient forum. This argument works in a case such as *Ussery*, where the defendants' medical business for the most part took place outside the District of Columbia. That analysis does not apply here, however, where the doctor and his corporate employers are predominantly District of Columbia practitioners and the parties began the doctor-patient relationship here. There was no abuse of trial court discretion.

*Affirmed.*