*Notice:  This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-1095

WILLIAM GARCIA, APPELLANT,

V.

AA ROOFING COMPANY, LLC, ET AL., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1337-14)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Submitted June 16, 2015                    Decided September 10, 2015)[*]

*Carlos M. Recio* was on the brief for appellant.

*Shawn C. Whittaker* was on the brief for appellee.

Before FISHER and THOMPSON, *Associate Judges*, and RUIZ, *Senior Judge*.

THOMPSON, *Associate Judge*:   In an amended complaint alleging breach of contract, violation of the Virginia Consumer Protection Act, fraud, and common law conspiracy to defraud, appellant William Garcia, a resident of Fairfax County,

---

[*]     The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment.  It is now being published upon the court's grant of appellant's motion to publish.

Virginia, sued appellees Holger Kuessner, AA Roofing Company, LLC ("AA Roofing"), and Wayne Hammond (AA Roofing's owner and principal manager), to recover damages arising out of what the amended complaint alleges was "shoddy" work done on the roof of appellant's McLean, Virginia residence in March 2011. The Superior Court dismissed the action without prejudice on the grounds of *forum non conveniens*. Appellant challenges that ruling, contending that the court misconstrued the facts or failed to consider them in the light most favorable to him; erroneously failed to give any deference to his choice of forum; erroneously failed to give any weight to the "defendants' significant relationships to the District of Columbia" and the "significant relationship between the plaintiff's causes of action and the District of Columbia"; and improperly shifted the burden of proof. We agree and therefore reverse and remand.

## I.

When reviewing a dismissal on the basis of *forum non conveniens*, we accept as true the factual allegations of the complaint. *Nixon Peabody LLP v. Beaupre*, 791 A.2d 34, 36 (D.C. 2002). Accordingly, for purposes of our analysis, we assume the truth of the following background facts drawn from the amended complaint and attached exhibits.

During June 2010, while on a boat ride, appellant was introduced to appellee Kuessner, a District of Columbia resident and the owner of HK Property Development, LLC, a home improvement company that does business and is licensed in the District. Appellant and Kuessner talked about certain home repair work that needed to be done at appellant's Fairfax County, Virginia residence, and the two men arranged to meet at appellant's home to discuss the work. During the ensuing meeting, Kuessner learned that appellant also needed to repair damage to the roof of his residence. Although appellant had already identified a contractor to perform this work, Kuessner responded to this information by "aggressively ma[king] efforts to divert the roofing work" to AA Roofing Company.[1] Kuessner "represented that he knew AA Roofing [Company] personally, knew that the company did very good work and that . . . [appellant] would receive an excellent, high quality job at a good price." Kuessner also offered to have AA Roofing Company perform a free estimate.

On July 8, 2010, Kuessner, working from his office in the District of Columbia, emailed appellee Wayne Hammond, a Maryland resident who did

_____

[1] The amended complaint asserts that appellee AA Roofing, incorporated in 2014, is the successor to AA Roofing Company. Appellees dispute this assertion.

business as AA Roofing Company, to ask Hammond to "check this one [i.e., appellant's residence] out for me" and "send me the estimate." AA Roofing Company held itself out as a "local roofing company in Washington, D.C.," "serving the Washington [D.C.] [a]rea." Kuessner's email to Hammond further stated, "This [project] is a big one[.]" In addition, the email mentioned two other properties, one in the District, and stated, "[I]t looks like we get the jobs."

In August 2010, Hammond provided Kuessner with AA Roofing Company's estimate for roof work on appellant's residence, and Kuessner forwarded the estimate to appellant. Thereafter, during phone calls between appellant and Kuessner, who participated from his office in the District of Columbia, Kuessner "again urged [appellant to] use the services of AA Roofing [Company.]" Appellant decided to hire AA Roofing Company, but he postponed the roof replacement until the following spring. Appellant eventually contacted AA Roofing Company directly, agreed to expand the scope of the project, and then entered into a contract with Hammond that was "based upon the original August 2010 estimate." AA Roofing Company replaced appellant's roof in March 2011.

Over two years later, in July 2013, appellant learned that his roof had been improperly installed. Appellant filed his lawsuit in this matter on March 7, 2014.

He alleged that Kuessner convinced appellant to hire AA Roofing Company because Kuessner and Hammond had a "long-time joint venture" relationship in which Kuessner served as a "sales agent" soliciting business for AA Roofing Company, setting the stage for AA Roofing Company to "cut corners to save money" and for Kuessner and Hammond to then share the resulting profits.

In June 2014, appellees AA Roofing and Hammond moved to dismiss appellant's complaint on the basis of *forum non conveniens*. They argued that the trial court should refrain from hearing this dispute because the District "has nothing to do with this case[,]" Virginia substantive law applies, and Virginia is not only an adequate alternative forum, but "in the interest of justice, . . . is the proper forum as it is the jurisdiction where any of [appellant's] alleged claims occurred." Judge Dixon granted the motion in a written order dated August 29, 2014.

## II.

"The purpose of the doctrine of *forum non conveniens* . . . is to avoid litigation in a *seriously inconvenient forum*, rather than to ensure litigation in the most convenient forum." *Hechinger Co. v. Johnson*, 761 A.2d 15, 20 (D.C. 2000)

(emphasis in original) (internal quotation marks omitted). In resolving a motion to dismiss for *forum non conveniens*, the trial court "is to be guided by enumerated 'private interest factors' affecting the convenience of the litigants and 'public interest factors' affecting the convenience of the forum[,]" as articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *Mills v. Aetna Fire Underwriters Ins. Co.*, 511 A.2d 8, 10 (D.C. 1986). The private interest factors include "(1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the ease of access to sources of proof; (4) the availability and cost of compulsory process; and (5) the enforceability of any judgment obtained." *Nixon Peabody*, 791 A.2d at 37 (quoting *Future View, Inc. v. CritiCom, Inc.*, 755 A.2d 431, 433 (D.C. 2000)). "[U]nless the balance [of these private factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508 (noting also that "the plaintiff may not, by choice of an inconvenient forum, vex, harass, or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy" (internal quotation marks omitted)). The public interest factors include: "(1) the clearance of foreign controversies from congested dockets; (2) the adjudication of disputes in the forum most closely [l]inked thereto; and (3) the avoidance of saddling courts with the burden of construing a foreign jurisdiction's law." *Nixon Peabody*, 791 A.2d at 37 (quoting *Future View*, 755 A.2d at 433). The trial court

is to "evaluate the contacts with the [relevant] jurisdictions in the light most favorable to the nonmoving party." *Medlantic Long Term Care Corp. v. Smith*, 791 A.2d 25, 32 (D.C. 2002).

"[T]he burden normally [is] allocated to the defendant to demonstrate why dismissal is warranted for *forum non conveniens*[.]" *Eric T. v. National Med. Enters.*, 700 A.2d 749, 754 (D.C. 1997) (internal quotation marks omitted); *Medlantic*, 791 A.2d at 29 ("[I]n most cases, a defendant who invokes the doctrine of *forum non conveniens* bears the burden of demonstrating why dismissal is warranted."). However, "when neither party resides in the District and the plaintiff's claim has arisen in another jurisdiction, the burden shifts to the plaintiff to justify bringing suit in the District rather than in the forum more significantly connected to the case." *Nixon Peabody*, 791 A.2d at 38 (quoting *Wyeth Labs., Inc. v. Jefferson*, 725 A.2d 487, 491 (D.C. 1999)). Nonetheless, this court has found burden-shifting appropriate "only where there is virtually no link to this jurisdiction." *Coulibaly v. Malaquias*, 728 A.2d 595, 606 (D.C. 1999) (internal quotation marks omitted).

In reviewing a ruling on a motion to dismiss on the grounds of *forum non conveniens*, this court "independently evaluates the pertinent factors[,]" not on a *de*

*novo* basis, but by "apply[ing] close scrutiny to the specific factors identified and evaluated by the trial court." *Nixon Peabody*, 791 A.2d at 37 (internal quotation marks omitted). "The decision whether to dismiss an action for *forum non conveniens* is entrusted to the sound discretion of the trial court[.]" *Medlantic*, 791 A.2d at 28; "[w]here the [trial] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Nixon Peabody*, 791 A.2d at 37-38 (internal quotation marks omitted). Nevertheless, "[a]lthough this court reviews a decision to dismiss on grounds of *forum non conveniens* for abuse of discretion, trial court rulings in this area receive closer scrutiny than most other exercises of discretion[.]" *Blake v. Professional Travel Corp.*, 768 A.2d 568, 572 (D.C. 2001); *see also Jacobson v. Pannu*, 822 A.2d 1080, 1083 (D.C. 2003) (noting that this court's review of a ruling on a *forum non conveniens* motion "does not allow the trial court the margin of error that the term 'discretion' ordinarily signifies"). "Once this court is satisfied that the trial court took the proper factors into consideration," reversal of its ruling on a *forum non conveniens* motion is appropriate only when there is a clear abuse of discretion. *Nixon Peabody*, 791 A.2d at 37.

**III.**

Although the trial court judge correctly articulated most of the foregoing principles, we agree with appellant that he strayed from them in resolving the defendants' motion.

First, the court was required to consider the facts as pled in the amended complaint and the attachments thereto in the light most favorable to appellant. The court emphasized in its ruling that allegedly false representations by appellee Kuessner were made in Virginia and that the roof-repair contract and unworkmanlike repairs were executed in Virginia, but made no mention in its analysis of, for example, (1) appellant's allegations that Kuessner sent correspondence and made phone calls from his office in the District to urge appellant to hire AA Roofing Company and to secure an estimate from Hammond for roof work on appellant's residence,[2] (2) AA Roofing Company's holding itself out as a "local roofing company in Washington, D.C.[,]" and (3) appellant's

---

[2] Analogizing to *Jacobson*, one might say that appellant's allegation is that the "consultation [that] cemented the . . . [eventual] relationship" with Hammond and AA Roofing Company occurred in the District. 822 A.2d at 1082.

allegation that Hammond and AA Roofing "regularly and systematically performed roofing services in the District of Columbia[.]"

Second, the court reasoned that Fairfax County, Virginia, rather than the District, is the "ideal forum for the plaintiff to bring suit." The court thereby revealed its focus on whether the District is the more (or most) convenient forum. The issue, however, was "not whether [Virginia] is the more convenient forum but, rather, whether the District of Columbia is a seriously *inconvenient* forum." *Beard v. South Main Bank*, 615 A.2d 203, 208 (D.C. 1992) (Terry, J., concurring) (emphasis in the original); *see also Blake*, 768 A.2d at 572 ("[T]he inquiry is not [w]hether the District of Columbia is the best forum for this litigation, but rather whether the District has so little to do with this case that its courts should decline to hear it." (internal quotation marks omitted)); *Hechinger Co.*, 761 A.2d at 20 ("The purpose of the doctrine of *forum non conveniens* . . . is to avoid litigation in a *seriously inconvenient forum*, rather than to ensure litigation in the most convenient forum." (emphasis in the original) (internal quotation marks omitted)); *Ussery v. Kaiser Found. Health Plan of Mid-Atlantic States, Inc.*, 647 A.2d 778, 780 (D.C. 1994) ("The rule is not that jurisdiction should be denied unless such denial would work an injustice[;] . . . rather that jurisdiction should be taken unless

to do so would work an injustice." (quoting *Wilburn v. Wilburn*, 192 A.2d 797, 799 (D.C. 1963) (footnote omitted))).[3]

Third, stating that appellant did "not me[e]t his burden of establishing that the District is a more convenient forum than Virginia," the trial court shifted the burden of persuasion to appellant, relieving defendants of their burden to show that the District is a seriously inconvenient forum. Yet, burden-shifting is appropriate "only where there is virtually no link to this jurisdiction." *Coulibaly*, 728 A.2d at 604 (internal quotation marks omitted). The burden of proof may shift from the defendant to the plaintiff "when neither party resides in the District" *and* "the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of the action [than does the District.]" *Id.* at 603 (quoting *Neale v. Arshad*, 683 A.2d 160, 163 (D.C. 1996)). Here, although the motion to dismiss on the ground of *forum non conveniens* was filed only by Hammond and AA Roofing, both non-domiciliaries of the District, the court could not properly

---

[3] Appellant's brief suggests that "the most serious risk of 'inconvenience' would appear to be to [his breach of contract, fraud, conspiracy, and consumer protection] claim[s] . . . if []he cannot litigate [them] in the District." *Blake*, 768 A.2d at 574. Appellant asserts that the Virginia statute of limitations may preclude him from pursuing those claims in Virginia. *See Mobley v. Southern Ry. Co.*, 418 A.2d 1044, 1047 (D.C. 1980) (explaining that an essential predicate to invocation of the doctrine of *forum non conveniens* is the "availability of an alternative forum").

ignore the fact that one of the defendants, appellee Kuessner, is a District resident. *Cf. Carr v. Bio-Medical Applications of Washington, Inc*., 366 A.2d 1089, 1092-93 (D.C. 1976) (upholding a dismissal for *forum non conveniens* where "[a]ll of the physicians named as defendants reside in Maryland and are licensed to practice medicine in that State[,]" "[t]he professional corporation composed of these doctors is a Maryland corporation[,]" and "Bio-Medical, the owner of the Maryland hemodialysis center where decedent was regularly treated, is a Delaware corporation qualified to do business exclusively in Maryland"). Among the facts pled were not only that defendant/appellee Kuessner resides in the District, but also that he worked to persuade appellant to utilize the services of AA Roofing Company from his office in the District, and that AA Roofing Company held itself out as a "local roofing company in Washington, D.C.[,]" solicited roofing business in the District, and worked through its alleged agent in the District (appellee Kuessner) to convey an estimate to appellant (allegedly as part of a conspiracy to defraud). Had the court focused on these allegations and taken them as true, it could not reasonably have concluded that there is "virtually no link" between the causes of action alleged and this jurisdiction. *Coulibaly*, 728 A.2d at 604.

Fourth, "[i]n reviewing a trial court decision for abuse of discretion, we must determine whether the decision maker failed to consider a relevant factor[.]" *Id.* at

603 (internal quotation marks omitted). The court here reasoned that the "plaintiff's dispute with these defendants has no relationship to the District whatsoever[.]" In so reasoning, it failed to consider the factors discussed in the paragraph above. Further, in reasoning that there was no relationship to the District that could "justify the imposition of jury duty on its citizens[,]" the court unreasonably failed to consider the interest of District residents in holding accountable defendants who engage in unfair trade practices involving a type of service the defendants also provide in the District of Columbia. *Cf. Medlantic*, 791 A.2d at 32 (where decedent's death allegedly was caused by appellants' negligent care in Maryland, "the District of Columbia, no less than the state of Maryland, has a significant interest in how resident corporations conduct business, especially where, as here, defendants also provide similar medical care in the District"). We are constrained to hold that the trial court did not "reasonably evaluate[] the motion in light of the relevant factors." *Blake*, 768 A.2d at 572 (internal quotation marks omitted).

Further, unless the balance of the *Gulf Oil* private factors was strongly in favor of the appellees, this was not the "rare[]" case in which plaintiff/appellant's choice of forum should be disturbed. *Coulibaly*, 728 A.2d at 601 (explaining that it is when "the trial judge finds th[e] balance of private interests to be in equipoise

or near equipoise[ that] he must then determine whether or not factors of *public interest* tip the balance in favor of a trial in a foreign forum" (emphasis in original)). In the trial court's estimation, there was no such strong balance in favor of the appellees, as the court found "no potential obstacles to a fair trial and no evidence of intent on the part of the plaintiff to engage in harassing or vexatious litigation," and the court had nothing more to say about the private interest factors other than that plaintiff would need to "take any judgment to the state of Maryland" to have it enforced against appellees Hammond and AA Roofing. This was not a consideration that was strongly in favor of dismissal.[4]

---

[4] A District of Columbia judgment against AA Roofing and Hammond could be enforced by enrolling it in Maryland pursuant to that state's Uniform Enforcement of Foreign Judgments Act. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 11-801 to 11-807 (West 2015); *see also Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 741 A.2d 462, 467-69 (Md. 1999). This case is not one in which a District judgment would need to be taken to a foreign country where the ability to obtain enforcement at all is questionable. *Cf. Coulibaly*, 728 A.2d at 599.

In addition, if this case were filed in Virginia, the jurisdiction the trial court found "most appropriate[,]" appellant would have to perform even more steps in order to enforce any judgment he might receive. The record does not show that any of the appellees has assets in Virginia. Therefore, appellant would have to domesticate a Virginia judgment in both Maryland and the District — whereas, if the case remained here, appellant would have to domesticate the judgment in only one other jurisdiction, Maryland. When the matter is viewed this way, the District is at least arguably a more convenient forum than Virginia.

Finally, the trial court found that "administrative difficulties would accrue from th[e] court having to ascertain and apply the [substantive] state law for Virginia, [which the parties agreed would apply,] with which th[e] . . . court would have to gain familiarity[.]" However, "[o]ur courts are not unfamiliar with applying the laws of other jurisdictions," *Medlantic*, 791 A.2d at 33 (internal quotation marks omitted),[5] and they "routinely adjudicate disputes among citizens of the District, Maryland, and Virginia where choice of law and conflicts of law issues abound." *Jacobson*, 822 A.2d at 1085. This case does not "involv[e the] possible peculiarities of state law from a geographically distant jurisdiction rarely addressed here." *Id*. Nor is it apparent (and appellees did not argue) that the trial court, in applying Virginia law, would be required to "untangle problems . . . in law foreign to itself." *Gulf Oil*, 330 U.S. at 509. "[A]t this stage of the proceedings, where the substantive issues in dispute have scarcely been developed, we are justifiably skeptical of the defendants' argument that . . . a Superior Court judge . . . would be unable to decide . . . correctly" any issue involving Virginia law. *Auerbach v. Frank*, 685 A.2d 404, 411 (D.C. 1996). We must conclude that the trial court gave undue weight to the burdensomeness of having to apply

---

[5]    *See also id.* at 32 (questioning whether litigation involving conduct in neighboring counties "can[] fairly be characterized as 'foreign'"); *Coulibaly*, 728 A.2d at 598 (referring to this "integrated metropolitan area").

Virginia law. We also conclude that it is "not unreasonable to impose jury service on District citizens to decide this case" since "the defendants are present and doing business in D.C." *Medlantic*, 791 A.2d at 33.[6]

Ordinarily, after we have determined that the trial court improperly exercised its discretion when evaluating the *forum non conveniens* factors, we remand the case, so that the trial court can conduct a reevaluation using the correct standards. *Coulibaly*, 728 A.2d at 605. However, "where the trial court [has] conducted an incomplete or partially erroneous analysis," as happened here, "this court may conduct the analysis based on the facts of record if there is but one permissible conclusion." *Medlantic*, 791 A.2d at 31; *see also Jacobson*, 822 A.2d at 1084 (noting that this court has "used our heightened review of trial court discretion in these cases to apply the [*Gulf Oil*] factors ourselves in ruling that the trial court erred as a matter of law"). We conclude that there is only one permissible conclusion in this case. For the reasons we have already described, the

---

[6] We also note that "'where this court has approved or ordered dismissal on *forum non conveniens* grounds, it has conditioned dismissal on the waiver of the statute of limitations in the alternative forum.'" *Future View*, 755 A.2d at 434 (quoting *Guevara v. Reed*, 598 A.2d 1157, 1161 (D.C. 1991)). That the trial court granted the motion to dismiss on *forum non conveniens* grounds without considering whether some or all of appellant's claims would be time-barred in Virginia, and without addressing the need for a waiver of any statute of limitations defense in that jurisdiction, is another reason why the court's ruling does not survive close appellate scrutiny.

appellees' motion to dismiss on the basis of *forum non conveniens* should not have been granted.

## IV.

For the foregoing reasons, we reverse the order of dismissal and remand the case to the trial court for further proceedings consistent with this opinion.

*So ordered.*